### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

RANDY FOOTE,                                )
                                            )
                Plaintiff,                   )
                                            )
        v.                                  )        C.A. No. 24-1061-JLH
                                            )
OFFICER CHRISTOPHER DAINO,                  )
individually and in their capacity as a NEW )
CASTLE COUNTY POLICE OFFICER,               )
individually and in his capacity as CHIEF   )
OF NEW CASTLE COUNTY POLICE,                )
COLONEL JOSEPH S. BLOCH, and NEW            )
CASTLE COUNTY, a governmental entity,       )
                                            )
                Defendants.                  )

### <u>MEMORANDUM ORDER</u>

Pending before the Court is Plaintiff's Motion for Leave to File Amended Complaint. (D.I. 21.) Defendants oppose the motion. (D.I. 23.)[1] Having reviewed the proposed First Amended Complaint (D.I. 21, Ex. 3 ("proposed FAC")), the Court concludes that the proposed amendment would be futile and that the motion should be denied.

1.      The Court writes primarily for the parties and assumes familiarity with the proposed FAC and the Court's prior Memorandum Order (D.I. 20). In brief, the proposed FAC alleges that Plaintiff's aunt secured a Protection From Abuse Order ("PFA Order") against Plaintiff, who is intellectually disabled. On May 16, 2022, New Castle County Police observed Plaintiff approaching his aunt's house in violation of the PFA Order. Officer Daino told Plaintiff "to put his hands behind his back," and "Plaintiff stood with his hands crossed in front of him." Daino then grabbed Plaintiff by the arm, and Plaintiff "was leg swept by Daino from behind, causing

---

[1] Plaintiff did not file a Reply Brief.

Plaintiff to fall to the ground on his stomach." (Proposed FAC ¶¶ 1, 12, 21, 23–27.) The proposed FAC asserts a variety of claims under federal and state law relating to Officer Daino's use of force.

2.      The Court begins with the proposed claims against Officer Daino and Colonel Bloch (the "Individual Defendants"). The Court previously granted a motion to dismiss the claims against the Individual Defendants under Federal Rule of Civil Procedure 12(b)(5) for failure to properly effectuate service. (D.I. 20 at 4–7.) In response to Plaintiff's pending motion for leave to amend, the Individual Defendants point out that they have never been served process in this matter. The Individual Defendants also point out that it would be futile to allow the claims against them in the proposed FAC to proceed, because those claims are barred by the applicable statutes of limitations. Plaintiff (who is represented by counsel) did not respond to the Individual Defendants' argument that they have never been served. Nor has Plaintiff responded to the argument that the proposed claims against the Individual Defendants are futile because they are barred by the applicable statutes of limitations.[2] Plaintiff's motion for leave to amend is denied insofar as the proposed FAC asserts claims against the Individual Defendants.

3.      That leaves the claims against Defendant New Castle County ("NCC"). Proposed Count III purports to assert a § 1983 claim against NCC. To survive a motion to dismiss, a pleading asserting a § 1983 claim against a municipality must allege "facts supporting both a

---

[2] The incident occurred on May 16, 2022, and Plaintiff apparently does not dispute that the Individual Defendants still have not been served. *See Katz v. Nat'l Bd. of Med. Exam'rs*, 751 F. App'x 231, 235 (3d Cir. 2018) (explaining that ADA claims are subject to state statute of limitations for personal injury actions); *Smith v. Delaware*, 236 F. Supp. 3d 882, 888 (D. Del. 2017) (explaining that § 1983 claims are characterized as personal injury actions for statute of limitations purposes and that in Delaware, § 1983 claims are subject to a two-year statute of limitations); *Jagger v. Schiavello*, 93 A.3d 656, 661 (Del. Super. Ct. 2014) (explaining that intentional infliction of emotional distress claims are subject to the same two-year statute of limitations).

The Court further observes that the proposed FAC contains no factual allegations involving Bloch and fails to plausibly state any claims against him.

plausible inference that there was a policy or custom that caused Plaintiff's injury and a plausible inference that the [municipality] was the deliberate, 'moving force' behind it." *Ferrell v. City of Wilmington*, No. 21-1593, 2023 WL 1437765, at *6 (D. Del. Feb. 1, 2023) (citations omitted), *report and recommendation adopted*, 2023 WL 2351795 (D. Del. Mar. 3, 2023).

4.    The Court previously granted NCC's motion to dismiss this claim because the Complaint contained only a threadbare, conclusory assertion that a policy or custom caused Plaintiff's injuries. (D.I. 20 at 2.)  The proposed FAC seeks to add the following allegations:

- "NCC has an official policy or widespread, longstanding custom of failing to properly train, supervise, and discipline its officers, including Officer Daino." (Proposed FAC ¶ 41.)

- "Upon information and belief, NCC was aware of repeated incidents involving the use of excessive force by its officers, including complaints and internal reports regarding Officer Daino's conduct prior to May 16, 2022."  (Proposed FAC ¶ 42.)

- "Despite this, NCC failed to take remedial action, including additional training or discipline, amounting to a deliberate indifference of Plaintiff's constitutional rights." (Proposed FAC ¶ 43.)

- "The failure to train or discipline resulted in foreseeable harm to intellectually disabled individuals, including Plaintiff."  (Proposed FAC ¶ 44.)

- "NCC's conduct was the moving force behind the constitutional violation suffered by Plaintiff."  (Proposed FAC ¶ 45.)

- "As such, NCC's policies, customs, and/or failure to act reflects a deliberate indifference to Plaintiff's constitutional rights, ultimately satisfying the *Monell* standard."  (Proposed FAC ¶ 46.)

5.      The proposed FAC's allegations remain deficient.  These allegations are merely "a formulaic recitation of the elements" of the municipal liability test.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The proposed FAC does not plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  For instance, the proposed FAC alleges that NCC was "aware of repeated incidents involving the use of excessive force by its officers," but does not explain what those incidents were, when they occurred, how they relate to Plaintiff's claims in this case, or any other pertinent facts.[3]

6.      What's more, to the extent Plaintiff seeks to assert a policy-or-custom theory, the proposed FAC does not allege facts plausibly supporting that theory.  It does not allege any facts plausibly suggesting that any policy or custom was the moving force behind Plaintiff's injuries.  And the few scattered occurrences referenced in the proposed FAC are insufficient to plausibly suggest a longstanding custom or that the Defendants acquiesced to such a custom.  *See Thorn v. New Castle Cnty.*, No. 21-1024, 2022 WL 2828837, at *3 (D. Del. July 20, 2022) (explaining that a few sporadic, dissimilar incidents over many years does not establish a custom), *report and recommendation adopted*, 2022 WL 23026365 (D. Del. Sept. 7, 2022).

7.      The proposed FAC also does not plead facts supporting a failure to train theory.  A municipality is liable under a failure to train theory "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact," and "the

---

[3] Under Count VI, the proposed FAC details three separate incidents involving officers from three separate police departments over the past decade wherein the officers used force against allegedly disabled persons.  (Proposed FAC ¶¶ 63–65.)  The proposed FAC does not incorporate those allegations into Count III.  But even if it did, the proposed FAC does not allege that those incidents involved Officer Daino or NCC, resulted from NCC's alleged policy or custom of failing to train its officers, or any other facts suggesting that those incidents are pertinent.

deficiency in training actually caused the police officers' indifference." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 391 (1989). As explained further below, the proposed FAC does not allege any facts plausibly suggesting that the Defendants were deliberately indifferent to Plaintiff's rights nor that any such deliberate indifference was caused by a failure to train. The proposed FAC does not state a § 1983 claim against New Castle County.

8.      That leaves Count VI, which purports to assert a claim for damages under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, against NCC. The Third Circuit has held that the ADA applies when officers make an arrest. *Haberle v. Troxell*, 885 F.3d 170, 178 (3d Cir. 2018) (cleaned up). But to proceed with a claim under the ADA for money damages, an arrestee must plausibly allege (among other things) "(1) knowledge that a federally protected right is substantially likely to be violated[;] and (2) failure to act despite that knowledge," *i.e.*, deliberate indifference. *Id.* at 181.

9.      The proposed FAC does not plausibly allege deliberate indifference. Plaintiff could do so "in two different ways: first, by alleging facts suggesting that the existing policies caused a failure to adequately respond to a pattern of past occurrences of injuries like the plaintiffs', or, second, by alleging facts indicating that [h]e could prove that the risk of cognizable harm was so great and so obvious that the risk and the failure to respond will alone support finding deliberate indifference." *Haberle*, 885 F.3d at 181 (cleaned up).

10.     According to the proposed FAC, "Police agencies in Delaware have had past occurrences or injuries like Plaintiff's" (proposed FAC ¶ 62):

- "In 2015, Jeremy McDole was shot by Wilmington Police while in a wheelchair after Wilmington Police responded to a call about a man with a gun. Officers fatally shot him when McDole reached for his waist." (Proposed FAC ¶ 63.)

- "In 2020, Brandon Roberts, who suffered from bipolar disorder, post-traumatic stress disorder, and depression, was fatally shot by Milford police after calling 911 saying 'all sorts of things,' claiming there was an ongoing domestic dispute and a gun involved. His fiancee [sic] then took the phone from him and explained Roberts was having a mental breakdown and no gun was involved." (Proposed FAC ¶ 64.)

- "In 2021, Kelly Rooks, a woman with bipolar disorder was fatally shot by a Delaware state trooper after she called 911 for help in the middle of a health crisis." (Proposed FAC ¶ 65.)

11.    Those allegations do not allege any facts plausibly suggesting that NCC's existing policies caused a failure to respond to a pattern of past occurrences of injuries like Plaintiff's. The proposed FAC does not allege that these prior incidents involved officers employed by NCC or subject to its policies, that they involved disabilities like Plaintiff's, that they were caused by acts like those allegedly committed against Plaintiff, that they were caused by a similar failure to follow any applicable policy or training, or any other relevant facts that would plausibly suggest these prior instances are sufficiently similar. Because those prior incidents "have not been adequately alleged to be 'similar to the violation at issue here, they could not have put [NCC] on notice' that policies, practices, and procedures had to be changed." *Haberle*, 885 F.3d at 182 (quoting *Connick v. Thompson*, 563 U.S. 51, 63 (2011)).

12.    Nor does the proposed FAC plead facts plausibly suggesting that the risk of cognizable harm was so great and obvious that the risk and failure to respond alone supports inferring deliberate indifference. For one thing, the proposed FAC does not allege any facts

6

plausibly suggesting that the Defendants knew that Plaintiff was disabled.[4] So, to the extent that the proposed FAC faults the officers for failing to follow NCC's policies regarding disabled persons (proposed FAC ¶¶ 59, 60, 61), it doesn't allege facts plausibly suggesting that the officers knew or should have known to apply those policies here.  What's more, although the proposed FAC mentions certain NCC policies, it does not explain what those policies say or how they were violated here.  For instance, it alleges that NCCPD "fail[ed] to implement de-escalation practices required by its own Mental Health Unit Policy," but does not allege what those required de-escalation practices are or how the Defendants allegedly violated them.  (Proposed FAC ¶ 59.)  Similarly, the proposed FAC faults Officer Daino for "fail[ing] to engage the Crisis Intervention Team (CIT)" (Proposed FAC ¶ 61), but doesn't allege sufficient facts suggesting that it was necessary or appropriate to engage the CIT before taking Plaintiff to the ground and arresting him for violating the PFA order.  In sum, the proposed FAC does not allege facts plausibly suggesting that NCC was deliberately indifferent.

13.    The Court determines that this proposed amendment would be futile, and that permitting additional amendment would also be futile.  It appears that no amendment can resurrect the claims against the Individual Defendants because they have never been properly served and the statute of limitations has lapsed.  And, after having had two opportunities, Plaintiff has not come close to pleading sufficient facts to plausibly suggest that NCC is liable.[5]  Accordingly, the

---

[4] The proposed FAC's failure to allege facts plausibly suggesting the Defendants' knowledge of Plaintiff's disability distinguishes this case from cases like *Washington v. Brown*, No. 23-1632, 2024 WL 2214686, at *1 (M.D. Pa. May 15, 2024), where the defendants were aware of the plaintiff's disability due to their prior interactions with the plaintiff.

[5] Plaintiff declined to file a Reply brief, giving up the opportunity to rebut Defendants' arguments and explain why further amendment would not be futile.

Court concludes that further amendment would be futile and that this case should be closed.[6] *See*

*Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 242–43, 257–58 (3d Cir. 2010)

(affirming district court's denial of leave to amend because amendment would be futile).

      For the reasons above, IT IS HEREBY ORDERED THAT

1.      Plaintiff's Motion for Leave to File Amended Complaint (D.I. 21) is DENIED.

2.      The Clerk of Court is directed to close the case.

Dated: August 7, 2026

                                          _____

                                          The Honorable Jennifer L. Hall
                                          UNITED STATES DISTRICT JUDGE

---

[6] The Court's analysis of Plaintiff's ADA claim relies primarily on the Third Circuit's opinion in *Haberle v. Troxell*, 885 F.3d 170, 178 (3d Cir. 2018) ("*Haberle I*"). In *Haberle I*, the Third Circuit held that the plaintiff failed to plausibly allege an ADA claim but that she should be given an opportunity to amend her complaint. *Id.* at 174. On remand, the district court granted a motion to dismiss the plaintiff's amended ADA claim. Then, in *Haberle v. Borough of Nazareth*, 936 F.3d 138, 141–42 (3d Cir. 2019) ("*Haberle II*"), the Third Circuit held that the plaintiff's amended complaint stated an ADA claim.

    *Haberle II* is distinguishable from this case. There, the amended complaint alleged that in the face of repeated encounters with disabled individuals, the defendant police department drafted a policy governing interactions with disabled individuals—establishing knowledge of a risk of discrimination against disabled individuals—but declined to adopt that or any policy, leading to the plaintiff's injuries. *Id.* Those facts are absent here.